UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ISRAEL SANTIAGO-LUGO,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No. 11-1363 (JAF)

(Crim. No. 95-029-1)

**OPINION AND ORDER**

Petitioner, Israel Santiago-Lugo, comes before us with the latest in a long line of motions for post-conviction relief. He styles his petition as one for a writ of error coram nobis or, in the alternative, a writ of audita querela. (Docket No. 1.)

**I.**

**Factual and Procedural Summary**

In 1996, Petitioner was convicted of engaging in a continuing criminal enterprise—the distribution of narcotics throughout Northern Puerto Rico over a seven-year period—in violation of 18 U.S.C. § 2 and 21 U.S.C. § 848, for which he received a life sentence. He was also convicted of an additional forty-one counts, for which he received concurrent ten-year sentences as to each count, and two counts of forfeiture under 18 U.S.C. § 982 and 21 U.S.C. § 853. Following his unsuccessful direct appeal, United States v. Santiago-Lugo, 167 F.3d 81 (1st Cir. 1999), Petitioner filed his first motion for relief under 28 U.S.C. § 2255. (Case No. 99-1504, Docket No. 2.) We denied this motion. (Id., Docket No. 24.) Petitioner subsequently

filed multiple motions for reconsideration, appeals of our denials, and motions for certificates of appeal.

Petitioner now brings three claims under the extraordinary common law writs of error coram nobis and audita querela. He asserts procedural error at sentencing, insufficient evidence, and illegality of the forfeiture of his assets.

## II.

### Standards for Relief Under Coram Nobis and Audita Querela

A.   **Writ of Error Coram Nobis**

Federal courts are empowered by the All Writs Act, 28 U.S.C. § 1651, to issue an array of common law writs, like error coram nobis and audita querela, that are not otherwise codified. Trenkler v. United States, 536 F.3d 85, 97 (1st Cir. 2008). A writ of error coram nobis, in its modern form, is a vehicle through which a petitioner no longer in federal custody can move a court to correct some "patent error affecting the validity or regularity" of his criminal conviction. Id. at 90 n.2; see also United States v. Sawyer, 239 F.3d 31, 37 (1st Cir. 2001) ("Unlike a writ of habeas corpus, a writ of coram nobis is issued once the petitioner is no longer in custody."); United States v. Baptiste, 223 F.3d 188 (3d Cir. 2000) (denying petition for coram nobis because petitioner was still in custody). It is available only to correct "fundamental errors" of law or fact. United States v. Denedo, 129 S. Ct. 2213, 2220 (2009). The Supreme Court notes that it is "difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)). Generally, the scope of relief available to a coram nobis petitioner mirrors that available under 28 U.S.C. §

2255. Howard v. United States, 962 F.2d 651, 653 (7th Cir. 1992); United States v. Ayala, 894 F.2d 425, 429 n.7 (D.C. Cir. 1990).

An extraordinary common law writ such as coram nobis is available only to the extent it fills a gap in the post-conviction remedial scheme created by § 2255. Trenkler, 536 F.3d at 97. If a petition for coram nobis falls within the substantive scope of § 2255, then we must recharacterize it as a § 2255 petition. Id. The First Circuit has cautioned, however, that a petitioner's failure to comply with the gatekeeping mechanisms imposed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), will not justify granting coram nobis relief for a claim otherwise cognizable under § 2255. Id. at 98.

**B.     Writ of Audita Querela**

The First Circuit has yet to expressly hold that the common law writ of audita querela is available to attack a criminal conviction. United States v. Holder, 936 F.2d 1, 5 (1st Cir. 1991). Assuming its availability, audita querela may be granted only "where there is a legal objection to a conviction, which has arisen subsequent to that conviction, and which is not redressable pursuant to another post-conviction remedy." Id. Like the writ of error coram nobis, audita querela cannot be granted if the relief sought is cognizable under § 2255. See Trenkler, 536 F.3d at 97–98 ("The strictures of section 2255 cannot be sidestepped by the simple expedient of resorting to some more exotic writ."); United States v. Holt, 417 F.3d 1172, 1174–75 (11th Cir. 2005) (holding audita querela cannot be granted where relief is cognizable under § 2255 and noting agreement of the Fourth, Fifth, Seventh, Ninth, Tenth, and D.C. Circuits).

### III.

### Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, Petitioner's pro se status does not excuse him from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

We lack jurisdiction to consider the merits of two of Petitioner's three claims. His claims of procedural error at sentencing and insufficient evidence for conviction are "classic habeas corpus scenario[s], squarely within the heartland carved out by Congress in section 2255." Trenkler, 536 F.3d at 97. Thus we recharacterize these claims as requests for relief under § 2255. As such, they must comply with the limitation on successive petitions set forth in § 2255(h). Petitioner has not yet secured a certification from the court of appeals to pursue a successive petition, and so we must dismiss these claims. §§ 2244; 2255(h).

Petitioner's claim arising from forfeiture does not suffer the same infirmity. Section 2255 cannot be used to challenge fines or restitution that are part of a final judgment. See Smullen v. United States, 94 F.3d 20, 25–26 (1st Cir. 1996). Because forfeiture, like fines or restitution, is merely a financial penalty and not a physical constraint on liberty, it is not properly challenged on a § 2255 motion. Rodriguez v. United States, No. 95-2322, 1997 U.S. App. LEXIS 35498, at *1 (1st Cir. Dec. 12, 1997). Thus, Petitioner's claim arising from criminal forfeiture need not comply with § 2255(h). But, as we discuss below, this claim is cognizable under neither coram nobis nor audita querela.

Petitioner remains in custody and, therefore, cannot challenge forfeiture through coram nobis. Sawyer, 239 F.3d at 37. His audita querela claim fails, also, because he "points to nothing occurring since his conviction that would render his conviction illegal." Holder, 936 F.2d at 5.

Petitioner argues that the forfeiture is illegal in light of United States v. Santos, 128 S. Ct. 2020 (2008), and the First Circuit's rulings in United States v. Jose, 499 F.3d 105 (1st Cir. 2007), and United States v. Heldeman, 402 F.3d 220 (1st Cir. 2005). (Docket No. 1 at 11.) In Santos, the Supreme Court defined "proceeds," as used in a money laundering forfeiture statute, 18 U.S.C. § 1956(a), to mean profits instead of gross receipts. 128 S. Ct. at 2033–34. The First Circuit later explicitly rejected the application of the Santos ruling to criminal forfeitures under 21 U.S.C. § 853, the statute under which Petitioner's assets were forfeited. United States v. Bucci, 582 F.3d 108, 123–24 (1st Cir. 2009). The First Circuit's reasoning in Bucci is equally applicable to 18 U.S.C. § 982, the other forfeiture statute Petitioner was sentenced under. The text of § 982(a)(1) does not contain the term "proceeds," which was the subject of the Supreme Court's analysis in Santos.

Jose and Heldeman both construe the Supreme Court's decision in United States v. Bajakajian, 524 U.S. 321 (1998), which defined the limits of the Eighth Amendment's proscription of excessive fines as applied to criminal forfeitures. Bajakajian stands for the proposition that a forfeiture violates the Eighth Amendment where it is "grossly disproportional to the gravity of the defendant's offense." Id. at 336–37. The First Circuit has distilled a three-factor test to determine whether a fine is "grossly disproportional": (1) whether defendant is of the class of people the criminal statute principally targeted; (2) additional penalties authorized

by the legislature or Sentencing Commission; and (3) harm caused by the defendant. Heldeman, 402 F.3d at 223 (citing Bajakajian, 524 U.S. at 337–40). In Jose, the First Circuit held that, beyond the Bajakajian "grossly disproportional" test, courts should also consider whether a forfeiture would deprive a defendant of his livelihood. 499 F.3d at 113.

We first apply the three Heldeman factors to the challenged forfeiture and find that forfeiture of $6,000,000 in cash and of various properties, real and personal (see Case No. 95-29, Docket No. 3067-7 (preliminary forfeiture order)) was not grossly disproportional to Petitioner's crime. Petitioner was the leader of a vast continuing criminal enterprise; he was the type of criminal for which 21 U.S.C. § 848 was drafted. The sentence under the U.S. Sentencing Guidelines, given the base offense level of forty-three, was life imprisonment with a fine of up to $4 million. Given the severity of the sentence under the guidelines, the forfeiture in question does not seem excessive when compared to the punishment for the underlying offense. Next, we turn to the harm caused by Petitioner. Over a seven-year period, this enterprise encompassed millions of dollars in sales, which represented myriad kilograms of narcotics, distributed from at least six points in Northern Puerto Rico. To further his business, Petitioner engaged in a deadly turf war with a rival gang. After weighing the three Heldeman factors, we find that the forfeiture in question was not grossly disproportional to Petitioner's crime.

Finally, we address Petitioner's argument that the forfeiture violated the Eighth Amendment because it robbed him of his livelihood. Livelihood is defined as "[a] means of supporting one's existence, esp. financially." Black's Law Dictionary 1018 (9th ed. 2009). As Petitioner is serving a life sentence and parole has been abolished in the federal system, his

livelihood will be provided for by the federal government for the rest of his natural life. In a recent discussion of the Excessive Fines Clause as applied to forfeitures, the First Circuit noted the high bar for such livelihood arguments but found that "it is not inconceivable that a forfeiture could be so onerous as to deprive a defendant of his or her future ability to earn a living, thus implicating the historical concerns underlying the Excessive Fines Clause." United States v. Levesque, 546 F.3d 78, 85 (1st Cir. 2008). Even if the forfeiture here were found to be so onerous, this concern is negated where, as here, Petitioner is serving a life sentence and, thus, has no need for a livelihood.[1]

### IV.
### Conclusion

For the foregoing reasons, we hereby **DENY** Petitioner's motion for a writ of error coram nobis or, in the alternative, a writ of audita querela (Docket No. 1).

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 20th day of May, 2011.

                                                        s/José Antonio Fusté
                                                        JOSE ANTONIO FUSTE
                                                        U.S. District Judge

---

[1] In Levesque, the First Circuit noted that the Excessive Fines Clause of the Eighth Amendment was taken verbatim from a clause in the English Bill of Rights, which was promulgated in reaction to the assessment of fines by the King's judges that were so impossibly large that defendants could not pay and were forced to remain in jail. 54 F.3d at 84 (citing Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 267, 290 (1989)). In the present case, there can be no concern that the forfeiture has robbed Petitioner of his livelihood to the point of indefinite incarceration, since he is already serving a life sentence.